FILED'08 AUG 11 16:35 USDC-LAE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA | § § § | |
| vs. | § § § | CIVIL ACTION NO._____ <br><br> JUDGE:____ **08 - 4156** |
| DRD TOWING COMPANY, LLC; DRD TOWING GROUP, LLC; AMERICAN COMMERCIAL LINES, LLC; AMERICAN COMMERCIAL LINES, INC.; WAITS, EMMETT & POPP, LLC; DAIGLE, FISSE & KESSENICH; STEPHEN MARSHALL GABARICK; BERNARD ATTRIDGE; AUSTIN SICARD; LAMONT L. MURPHY, individually and on behalf of MURPHY DREDGING; DEEP DELTA DISTRIBUTORS, INC.; DAVID CVITANOVICH; KELLY CLARK; TIMOTHY CLARK, individually and on behalf of TAYLOR CLARK, a minor child; THOMAS CLARK; ETTA CLARK; BRADLEY BARROSSE; TRICIA BARROSSE; LYNN M. ALFONSO, SR.,; GEORGE C. MCGEE; SHERRAL IRVIN; JEFFERSON MAGEE; and ACY J. COOPER, JR. | § § § § § § § § § § § § § § § § § § § § § § § § § | MAG. JUDGE:____ **SECT I MAG 4** <br><br> SECTION:____ <br><br><br><br><br><br><br><br><br><br><br><br> PURSUAT TO RULE 9(h) <br> FED. R. CIV. PRO. |

## INDEMNITY INSURANCE COMPANY OF NORTH
## AMERICA'S COMPLAINT FOR INTERPLEADER
## AND FOR DECLARATORY RELIEF

This is an original complaint in the nature of an interpleader and an action for

declaratory relief brought by the Plaintiff Indemnity Insurance Company of North

America against the Defendants DRD Towing Company, LLC.; DRD Towing Group,

LLC; American Commercial Lines, LLC; American Commercial Lines, Inc.; Waits,

Emmett & Popp, LLC; Daigle, Fisse & Kessenich; Stephen Marshall Gabarick;

Fee 350.
✓ Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

Bernard Attridge; Austin Sicard; Lamont L. Murphy, individually and on behalf of

Murphy Dredging; Deep Delta Distributors, Inc.; David Cvitanovich; Kelly Clark;

Timothy Clark, individually and on behalf of Taylor Clark, a minor child; Thomas

Clark; Etta Clark; Bradley Barrosse; Tricia Barrosse; Lynn M. Alfonso, Sr.; George

C. McGee; Sherral Irvin; Jefferson Magee; and Acy J. Cooper, Jr.

## JURISDICTION

1.    The Court has subject-matter jurisdiction over this case because it is a civil

case of admiralty or maritime jurisdiction, 28 U.S.C. § 1333(1), and this case is

brought pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. The insurance

policy made the basis of this suit is a maritime contract, since it provides certain Hull

and Machinery coverage and certain Protection and Indemnity (P&I) coverage for the

tug MEL OLIVER.

2.    Alternatively, this Court has subject-matter jurisdiction over this dispute

because this is a civil case in which there is diversity of citizenship. There is diversity

jurisdiction because the parties are citizens of different states and because the amount

in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).


    a.    The Plaintiff Indemnity Insurance Company of North America ("IINA")

          is a Pennsylvania corporation with its principal place of business in

          Philadelphia, Pennsylvania.

2

b.   Upon information and belief, the Defendant DRD Towing Company, LLC, is a Louisiana limited liability company with its principal place of business in the State of Louisiana.

c.   Upon information and belief, the Defendant DRD Towing Group, LLC, is a Louisiana limited liability company with its principal place of business in the State of Louisiana.

d.   Upon information and belief, the Defendant American Commercial Lines, LLC is a Delaware limited liability company with its principal place of business in Jeffersonville, Indiana.

e.   Upon information and belief, the Defendant American Commercial Lines, Inc. is a Delaware corporation with its principal place of business in Jeffersonville, Indiana.

f.   Upon information and belief, the Defendant Waits, Emmett & Popp, LLC is a Louisiana limited liability company with its principal place of business in New Orleans, Louisiana.

g.   Upon information and belief, the Defendant Daigle, Fisse & Kessenich is a Louisiana professional law corporation with its principal place of business in Covington, Louisiana.

h.    Upon information and belief, the Defendants Stephen Marshall Gabarick, Bernard Attridge, Austin Sicard, Lamont L. Murphy, David Cvitanovich, Kelly Clark, Timothy Clark, Taylor Clark, Thomas Clark, Etta Clark, Bradley Barrosse, Tricia Barrosse, Lynn M. Alfonso, Sr., George C. McGee, Sherral Irvin, Jefferson Magee, and Acy J. Cooper, Jr., are individuals who are citizens and residents of Louisiana.

i.    Upon information and belief, the Defendant Deep Delta Distributors, Inc. is a Louisiana corporation with its principal place of business in Louisiana.

3.    The request for interpleader is also within this Court's jurisdiction because of Rule 22 of the Federal Rules of Civil Procedure, which allows interpleader in federal actions. Since this Court otherwise has jurisdiction in this case, as detailed in the prior paragraphs, it would also have the authority to allow a request for interpleader under Rule 22.

4.    This Court also has subject-matter jurisdiction over this case under statutory interpleader. 28 U.S.C. § 1335. The policy of insurance made the basis of this suit has a value in excess of $500, and the Plaintiff IINA will move the Court for leave to deposit the $985,000.00 value of that insurance policy into the registry of the Court. In addition, two or more of the adverse claimants to the interpleaded funds are of diverse citizenship.

4

## VENUE

5.     Venue is proper in this Court because either (1) a substantial part of the events

or omissions giving rise to the claim occurred in this District, or (2) any Defendant

is subject to personal jurisdiction in this District. 28 U.S.C. § 1391(a) and (b).

6.     Venue is also proper in this Court because one or more of the claimants to the

interpleaded funds resides in this judicial district.  28 U.S.C. § 1397.

## UNDERLYING EVENTS AND CLAIMS

7.     On or about July 23, 2008, the *M/V Tintomara* collided with the *Barge DM-932*

on the Mississippi River near the City of New Orleans, Louisiana.  At the time of the

collision, the *Barge DM-932* was being towed by the *M/V Mel Oliver.*  As a result of

the collision, the *Barge DM-932* spilled  No. 6 heavy fuel oil into the Mississippi

River.

8.     Also as a result of the collision and oil spill, a number of entities have filed

lawsuits ("the Class-Action Suits") against DRD Towing Company, LLC or DRD

Towing Group, LLC (collectively "DRD"), the alleged owner and operator of the *M/V*

*Mel Oliver*, and against American Commercial Lines, LLC or American Commercial

Lines, Inc. (collectively "ACL"), the alleged owner and operator of the *Barge DM-*

*932*, among other Defendants.  Additional claims and lawsuits may also have been

filed or may be filed in the future as a result of the collision and spill.

9.     One of the abovementioned Class-Action Suits is Case No. 08-4007, styled

*Stephen Marshall Gabarick and Bernard Attridge, on behalf of themselves and all others similarly situated v. Laurin Maritime (America) Inc. et al.*, and filed on July 24, 2008 in the United States District Court for the Eastern District of Louisiana. In that class-action suit ("the Gabarick Suit"), the plaintiffs claim that they are citizens of Louisiana who reside within the district of New Orleans, Louisiana. They are bringing suit on their own behalf and on behalf of "all residents and inhabitants of New Orleans who have suffered any damages and/or losses from the collision of the M/V TINTOMARA with the BARGE DM932 on July 23, 2008." The plaintiffs have brought suit against DRD Towing Group, LLC, which is alleged to be the owner and operator of the *M/V Mel Oliver*, and against American Commercial Lines, Inc., which is alleged to be the owner and operator of the *Barge DM-932*, along with several other defendants. In their Class Action Complaint, the plaintiffs allege that the collision was caused by the concurrent negligence of the defendants and that the defendants violated the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. With respect to the negligence claim, the plaintiffs allege in particular that the defendants were negligent in "operating the vessel with untrained and unlicensed personnel" and in "failing to properly inspect to assure that their vessels, equipment and personnel were fit for their intended purpose." The plaintiffs assert that "[t]he M/V MEL OLIVER was under the command of an operator who only had an apprentice mate's license" and that "[n]o one aboard had a master's license, which is required to operate

6

the tug on the river." The plaintiffs allege several types of injuries, including: environmental contamination of the Mississippi River and its shorelines; injuries from exposure to toxic gases that have allegedly spread from the site; loss of revenue to persons and businesses which have been prevented from using or working around the Mississippi River; and other damages. The plaintiffs seek at least $5 million in economic and compensatory damages, punitive damages, and other amounts.

10.    Another of the Class-Action Suits is Case No. 08-4025, styled *George C. McGee and Sherral Irvin v. Laurin Maritime (America), Inc. et al.*, and filed on July 25, 2008 in the United States District Court for the Eastern District of Louisiana ("the McGee Suit"). Although the allegations and causes of action in that suit are very similar to the allegations and causes of action in the Gabarick Suit, there are some additional or different allegations. For instance, in the McGee Suit, the plaintiffs alleged that the defendants were negligent in "failing to take the proper precautions to render the vessels fit and seaworthy upon the undertaking of the voyage in question," in "failing to provide seaworthy vessels and appliances," and in "failing to provide fit and properly trained crews."

11.    At least three other Class-Action Suits have been filed against the alleged owners and operators of the *M/V Mel Oliver* and the *Barge DM-932* as a result of the collision and oil spill on or about July 23, 2008. These lawsuits, which contain allegations and causes of action very similar to those in the Gabarick Suit and in the

McGee Suit, are as follows:

    a.    Case No. 08-4012, styled *Austin Sicard et al. v. Laurin Maritime (America) Inc. et al.*, and filed on July 24, 2008 in the United States District Court for the Eastern District of Louisiana;

    b.    Case No. 08-4055, styled *Jefferson Magee and Acy J. Cooper, Jr. v. American Commercial Lines, Inc. et al.*, and filed on July 29, 2008 in the United States District Court for the Eastern District of Louisiana; and

    c.    Case No. 08-4060, styled *Vincent Grillo and Anthony Buffinet v. American Commercial Lines, Inc. et al.*, and filed on July 29, 2008 in the United States District Court for the Eastern District of Louisiana.

12.    In addition to the foregoing lawsuits asserting claims against various defendants, at least two other lawsuits have been filed in connection with the collision of the *M/V Tintomara* and the *Barge DM-932* and the resulting oil spill. Those two lawsuits are limitation-of-liability proceedings. One of those lawsuits is Case No. 08-4023, styled *In re Whitefin Shipping Co., Ltd.*, and filed on July 25, 2008 in the United States District Court for the Eastern District of Louisiana. That lawsuit seeks

to limit the liability of the owners of the *M/V Tintomara* to the value of their interest in that vessel and the value of her pending freight. The second lawsuit is Case No. 08-4046, styled *In re American Commercial Lines, LLC*, and filed on July 28, 2008 in the United States District Court for the Eastern District of Louisiana. In that lawsuit, the owner of the *Barge DM-932* seeks to limit its liability to the value of its interest in that vessel.

13.   After the collision and oil spill, the law firm of Daigle, Fisse & Kessenich was retained by Marsh USA on behalf of DRD to protect the interests of DRD in connection with the collision and spill. Daigle, Fisse & Kessenich has generated, and continues to generate, attorney's fees and expenses on behalf of DRD. Daigle, Fisse & Kessenich has also requested that Plaintiff IINA and other underwriters "confirm in writing their consent to, and guarantee of payment of, all defense costs and fees of [their] firm as well as expert witness fees and other costs (subject to [underwriters'] approval) associated with the defense of DRD by Daigle, Fisse & Kessenich."

14.   Also after the collision and oil spill, the law firm of Waits, Emmett & Popp, LLC was retained by DRD to defend it in connection with the numerous claims that have been asserted against DRD as a result of the collision and spill. Waits, Emmett & Popp, LLC has generated, and continues to generate, attorney's fees and expenses on behalf of DRD. Waits, Emmett & Popp, LLC has also demanded that Plaintiff IINA confirm that IINA will consent to the firm of Waits, Emmett & Popp, LLC

providing a defense to DRD and confirm that Plaintiff IINA will reimburse DRD for costs and expenses paid to Waits, Emmett & Popp, LLC for DRD's defense.

15.    In addition to the foregoing, DRD has requested that Plaintiff IINA provide a letter of undertaking or other security for the value of the *Mel Oliver* in the amount of $780,000 so that DRD may file a limitation of liability proceeding.

16.    In addition to the foregoing, ACL has recently made a demand on DRD and its underwriters (including Plaintiff IINA) to assume the complete and unconditional defense and indemnification of ACL for any and all claims arising out of the July 23, 2008 collision and pollution incident. ACL claims that under two charter agreements, DRD was required to maintain various insurance coverages to protect ACL, including hull protection and indemnity insurance, pollution insurance, excess liability insurance, and excess pollution insurance. ACL asserts that all such policies were required to name ACL and its assigns as additional insureds and to contain a full waiver of subrogation in favor of ACL for the services being provided to DRD at the time of the collision.  As a result, ACL has made a demand on DRD's insurers and underwriters for full and complete insurance coverage and protection in ACL's asserted capacity as an additional insured under DRD's insurance policies. ACL has also demanded that DRD and its insurers and underwriters advise the United States Coast Guard and other appropriate authorities that DRD and its underwriters are the responsible party for the pollution event in question and that they will honor and

satisfy all liability of DRD and ACL pursuant to the Oil Pollution Act of 1990.

## IINA'S INSURANCE POLICY

17.     Plaintiff IINA issued Policy No. N0 2209883 ("the IINA Policy" or "the Policy") to DRD Towing Company, LLC and others, providing specified coverage for the period from July 1, 2008 to July 1, 2009. The IINA Policy generally provides two principal types of coverage: Section HM providing certain Hull and Machinery coverage, and Section PI providing certain Protection and Indemnity coverage.

18.     The Hull and Machinery coverage applies only with respect to the particular vessels identified on the Schedule/Description of Vessels included in the Policy, and the coverage provided for each vessel is limited to that vessel's agreed value stated in the Schedule/Description of Vessels. Thus, with respect to the *M/V Mel Oliver*, the Hull and Machinery coverage is limited to $850,000, the amount specified for that vessel in the Schedule/Description of Vessels. There is also a $25,000 deductible applicable to the Hull and Machinery coverage. The *Barge DM-932* is not listed in the Schedule/Description of Vessels, and therefore no Hull and Machinery coverage is provided for the *Barge DM-932*.

19.     Although the Hull and Machinery coverage provides certain coverage for loss of or damage to a vessel listed on the Schedule/Description of Vessels, caused by the negligence, error of judgment or incompetence of any person, such coverage exists only if "such loss or damage . . . has not resulted from want of due diligence by the

11

Insured(s), the Owner(s) or Manager(s) of the Vessel, or any of them."

20.    The Protection and Indemnity coverage of the Policy generally applies only with respect to the particular vessels identified on the Schedule/Description of Vessels included in the Policy. The Protection and Indemnity coverage has a limit of liability of $1 million each accident or occurrence, and there is a deductible of $15,000 per accident or occurrence.

21.    The Protection and Indemnity insurance generally covers "costs, charges, and expenses reasonably incurred and paid by the Assured in defense against any liabilities insured against . . . in respect of the vessel named herein." That coverage is subject to applicable deductibles and falls within the limits of liability under the Protection and Indemnity insurance. In addition, "[t]he Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible." All costs under the Protection and Indemnity Insurance, including said defense costs, are subject to the protection and indemnity limits of liability.

22.    Under Section PI, the Policy provides certain Collision and Towers Liability coverage with respect to a covered vessel. However, that coverage applies only if the

covered vessel is at fault. Moreover, the Collision and Towers Liability coverage does not pay for "any sum which the Insured or the Surety may become liable to pay or shall pay in consequence of, or with respect to 1. for loss, damage or expense to vessel(s) in tow owned (other than vessel(s) bareboat chartered to others), bareboat chartered, managed or operated by the Insured and/or its affiliated and/or subsidiary companies and/or corporations, and to cargo, owned by the Insured and/or its affiliated and/or subsidiary companies and/or corporations, on board vessel(s) in tow of the Vessel hereby insured." The Collision and Towers Liability insurance also excludes from coverage "any sum which the Insured or the Surety may become liable to pay or shall pay . . . in consequence of, with respect to, or arising out of . . . (a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law; (b) cargo or property on or the engagements of the Vessel; (c) loss of life, personal injury or illness; (d) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever."

23.     Additionally, as the Collision and Towers Liability coverage is incorporated into Section PI of the Policy, the warranty of seaworthiness implied from the general maritime law is applicable to the coverage under Section PI of the Policy that may apply to claims arising out of the collision.

13

24.    The Policy also contains certain General Conditions Applicable to All Sections of this Policy. One of those general conditions is a Punitive Damage Exclusion Clause, which states that "[n]otwithstanding anything to the contrary elsewhere herein, the underwriters will not indemni[f]y the assured in respect of any liability imposed on the assured as punitive or exemplary damages, however described."

25.    Furthermore, Section PI of the IINA Policy contains an American Institute Pollution Exclusion Clause (P&I) and Buy Back Endorsement A, which provides:

> This policy will not indemnify the Assured against any sum(s) paid, nor insure against any liability, with respect to any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise, incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, water, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.
>
> IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF $Included THE ABOVE POLLUTION EXCLUSION CLAUSE (P&I) SHALL NOT APPLY TO SUMS PAID, OR LIABILITY OF THE ASSURED:
>
> 1)    For loss of life of, or bodily injury to, or illness of, any person; or
>
> 2)    For loss, damage or expense to any cargo or property carried on board the insured Vessel(s); or,
>
> 3)    For loss, damage or expense to any cargo or property on board any other vessel or contained or stored ashore unless such sums are paid, or liability is imposed, as a result of contact of such cargo or property with oil, petroleum products, chemicals or

other substances of any kind or nature whatsoever arising in consequence of their sudden and accidental discharge, emission, spillage or leakage upon or into the seas, water, land or air; or,

4)   For contamination of any cargo or property resulting from the pumping of oil, petroleum products, chemicals or any other substance of any kind or nature whatsoever directly into any other vessel, or between tanks of the insured Vessel(s), or into storage tanks or receptacles ashore or elsewhere.

PROVIDED that such sums, or such liability, are insured elsewhere under the terms and conditions of this Policy. All other terms and conditions, including any deductible provisions, of this Policy shall remain unchanged.

Although that pollution exclusion does not apply to "sums paid, or liability of the assured, for loss, damage or expense to any cargo or property on board any other vessel or contained or stored ashore," the exclusion does apply if "such sums are paid, or liability is imposed, as a result of contact of such cargo or property with oil, petroleum products, chemicals or other substances of any kind or nature whatsoever arising in consequence of their sudden and accidental discharge, emission, spillage or leakage upon or into the seas, water, land or air."

## IINA'S CLAIM IN THE NATURE OF AN INTERPLEADER AND CLAIM FOR DECLARATORY RELIEF

26.   In accordance with Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1335, and 28 U.S.C. § 2201, the Plaintiff IINA brings an action in the nature of an interpleader, and an action for declaratory relief, against the Defendants, each of

whom claims or demands some part or all the coverage of the Policy.

27.     DRD, ACL, Daigle, Fisse & Kessenich, and Waits, Emmett & Popp, LLC are claiming that the IINA Policy was in full force and effect at the time of the July 23, 2008 incident. As mentioned above, the plaintiffs in the Class-Action Suits are seeking economic and compensatory damages against DRD and ACL in an amount of at least $5 million, and DRD and ACL are each claiming that they are entitled to the policy limits of the IINA Policy to satisfy the claims made against them in the Class-Action Suits and possibly other claims. Moreover, Daigle Fisse & Kessenich and Waits, Emmett & Popp, LLC are seeking the payment of attorney's fees, expenses, and costs that, if covered, would reduce the limits of liability available under the Protection and Indemnity coverage.

28.     Although Plaintiff IINA denies that DRD and ACL are liable for any damages in the lawsuits and claims brought against them, the IINA Policy may not provide coverage for those damages or for the attorney's fees, expenses, and costs incurred in defending against those lawsuits and claims.

29.     Because the Defendants and other claimants have conflicting claims to the policy limits and because the IINA Policy may not cover those claims, Plaintiff IINA is in doubt as to which, if any, of the claimants is entitled to be paid the amount of the Policy.

30.    As a result, Plaintiff IINA brings this action in the nature of an interpleader and will deposit its policy limits into the registry of the Court. IINA requests that the Court order all of the claimants to interplead their respective claims and that the Court determine the rights of all parties, including IINA, to the interpleaded funds. IINA requests that the Court refund or return all or part of the interpleaded policy limits if IINA is entitled to all or part of those funds. IINA also requests that it be discharged from all liability in the premises, except to any person whom the Court shall adjudge is entitled to part or all of the interpleaded funds.

31.    Plaintiff IINA further requests that this Court restrain or enjoin each of the Defendants from instituting or prosecuting any proceeding in any State or United States Court affecting IINA's Policy, or any part thereof.

32.    Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." That statute further provides that "any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

33.    Plaintiff IINA requests that this Court declare the rights and legal relations under its Policy, with respect to the Defendants.

34.    In particular, IINA asks this Court to declare whether it has any obligation to defend or indemnify DRD Towing Company, LLC; DRD Towing Group, LLC;

American Commercial Lines, LLC; and American Commercial Lines, Inc. against the allegations and causes of action in the Class-Action Suits and against any other claims and causes of action that may be brought against DRD or ACL as a result of the collision and oil spill. Among other things, IINA asks this Court to declare:

    a.    that the *Barge DM-932* is not a covered vessel with respect to any coverage of the IINA Policy;

    b.    that if the losses sought by or against DRD and ACL resulted from a breach of the warranty of seaworthiness or a want of due diligence by the insureds, the owners, or managers, or any of them, then such losses are not recoverable under any coverage under the IINA Policy;

    c.    that any claims against DRD or ACL or both for punitive or exemplary damages are not covered by the IINA Policy;

    d.    that many of the claims against DRD and ACL are excluded from coverage by the American Institute Pollution Exclusion Clause (P&I) and Buy Back Endorsement A of the Policy;

35.    In the alternative, if this Court were to determine that the IINA Policy has some application to claims brought by or against either DRD or ACL, then IINA requests that this Court declare that IINA's limit of liability under the PI Section of its Policy

for all claims, expenses, and defense costs arising out of the accident is at most $985,000 ($1,000,000 limit minus the deductible of $15,000). In that event, IINA also requests that this Court declare the rights of all parties and claimants to any amounts available under the PI Section of the IINA Policy. No claims have been presented under the Hull and Machinery coverage of the IINA Policy, and IINA reserves the right to request that this Court declare the rights of any persons making claim thereunder.

36.    Plaintiff IINA further requests that it be awarded all of its attorney's fees and costs and such other and further relief to which it is entitled at law, in admiralty, or in equity.

Respectfully submitted,

BROWN SIMS, P.C.

By: _____

Charles G. Clayton, No. 25368, T.A.
Mark L. Clark, No. 30875
Andrew B. Cooper. No. 26243
Poydras Center, Suite 2200
650 Poydras Street
New Orleans, Louisiana 70130
Telephone: 504.638-8472
Facsimile:  504.638-8473

*Attorneys for Plaintiff Indemnity Insurance Company of North America*

19

OF COUNSEL

Kenneth G. Engerrand
Mark C. Clemer
Michael A Varner
Brown Sims, P.C.
1177 West Loop South, 10th Floor
Houston, Texas 77027-9007
Telephone: 713.629-1580
Telecopier: 713.629-5027